**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

Shameika L. Plaintiff o/b/o D.D.B.,

                                Plaintiff,

                -against-

Martin O'Malley, Commissioner of Social
Security Administration,

                              Defendant.

----------------------------------------------------------------X

23-cv-9174

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

      Plaintiff Shameika Butler, on behalf of D.D.B., a minor, brings this action

under 42 U.S.C. §405(g). She seeks judicial review of a final determination of the

Commissioner of Social Security (the Commissioner), which denied Plaintiff's

application for disability benefits under the Social Security Act and found that

D.D.B. was not disabled. This action is before the undersigned after the parties

consented to this Court's jurisdiction for all purposes on November 29, 2023. (ECF

No. 8).

      The parties now cross-move for judgment on the pleadings under Rule 12(c) of

the Federal Rules of Civil Procedure. (ECF Nos. 12, 14, 15). For the reasons below,

Plaintiff's motion is **DENIED,** and the Commissioner's motion is **GRANTED**.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:_ 3/27/2025

# I.    BACKGROUND

The facts below are taken from the Social Security Administration's administrative record, filed by the Commissioner on February 16, 2024. (ECF No. 11 (SSA Record)).[1]

## A. Application History

On November 29, 2017, Plaintiff filed for disability benefits under the Social Security Act and Supplemental Security Income on behalf of her minor daughter, D.D.B., alleging that she had been disabled since November 1, 2015. (ECF No. 11-1 at 5).[2] Plaintiff's claims were initially administratively denied on May 2, 2018 (*id.* at 166-170), and on May 23, 2018, she requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 172). On August 29, 2019, ALJ Moises Penalver held an in-person hearing, at which Plaintiff and D.D.B. appeared with an attorney and testified. (*Id.* at 88—118). On October 28, 2019, the ALJ issued a written decision in which he concluded that D.D.B. was not disabled under the Social Security Act. (*Id.* at 135—150). The ALJ reasoned that D.D.B. did not have "an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." (*Id.* at 29, 149). Plaintiff sought review from the Appeals Council, who denied her request.

---

[1] The undersigned conducted a plenary review of the entire administrative record, familiarity with which is presumed.  The undersigned assumes knowledge of the facts surrounding D.D.B.'s medical history and does not recite them in detail, except as relevant to the analysis set forth in this Opinion and Order.

[2] All page numbers to documents filed on ECF refer to the pagination generated by ECF on the top right corner of a given page, not the sequential numbering of the SSA Record provided on the bottom right corner of the page.

(*Id.*at 155—165). Plaintiff then sought review from this Court, which ultimately granted the parties' stipulation for the matter to be remanded for further administrative proceedings. (ECF No. 12 at 5). The Appeals Council then vacated the August 2019 decision and remanded the case to the ALJ. (*Id.*). The ALJ then held a second hearing on February 2, 2023, after which the ALJ determined that D.D.B. was not disabled. (*Id.*). The Appeals Council declined to review this decision, and this action followed. (ECF No. 1).

## B. Record Before the ALJ

Both parties have provided summaries of the testimonial, medical, and opinion evidence contained in the administrative record.  (ECF Nos. 12 at 6-13; 14 at 6–9).  Based on an independent and thorough examination of the record, the undersigned finds that the parties' summaries of the evidence are largely comprehensive and accurate.  Thus, the undersigned adopts these summaries and discusses the record in more detail only as necessary to dispose of the issues raised. See, e.g., *Lieberman v. Kijakazi*, No. 19-cv-2870, 2022 WL 20487096, at *2 (S.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2024 WL 985112, at *1 (S.D.N.Y. Mar 7, 2024).

## II.    <u>LEGAL STANDARDS</u>

## A. Standard of Review

This Court "engage[s] in limited review" of the Commissioner's decision. *Schillo v. Saul*, 31 F.4th 64, 74 (2d Cir. 2022).  The Court "conduct[s] a plenary

review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.*; *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "The substantial evidence standard is a very deferential standard of review," such that it is not the function of the Court "to determine de novo whether a plaintiff is disabled." *Schillo*, 31 F.4th at 74 (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* "[O]nce an ALJ finds facts, [this Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Id.* (internal quotation marks omitted).

But "where an error of law has been made that might have affected the disposition of the case, this [C]ourt cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (alteration and internal quotation marks omitted). Thus, "[f]ailure to apply the correct legal standards is grounds for reversal." *Id.* "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when

the ALJ's rationale is unclear in relation to the evidence in the record, the Court may remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); *accord Fowlkes v. Adamec*, 432 F.3d 90, 98 (2d Cir. 2005).

### B. Statutory Disability

An individual under the age of 18 is considered disabled if she is not engaged in "substantial gainful activity" and has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

The Commissioner applies a three-step analysis to evaluate whether a person under the age of eighteen qualifies for disability benefits. 20 C.F.R. § 416.924(a)-(d). First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ determines whether the child has a "medically determinable impairment [or combination of impairments] that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id*. § 416.924(c). And third, if the ALJ finds a severe impairment, he or she must then consider whether the impairment, or combination of impairments, meets, "medically equals" or, as is most pertinent here, "functionally equals" a disability listed in the regulatory "Listing of Impairments" at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. § 416.924(c)–(d). An ALJ who makes an adverse finding at step three of the sequential analysis must "set forth a specific

rationale" to support their conclusion. *Becerril o/b/o JAT v. Comm'r of Soc. Sec.*, No. 18CIV8513NSRJCM, 2019 WL 5722121, at *8 (S.D.N.Y. Aug. 29, 2019), *report and recommendation adopted,* No. 18CIV8513NSRJCM, 2019 WL 4593622 (S.D.N.Y. Sept. 23, 2019) (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

To determine whether a child's impairment or combination of impairments functionally equals a listed impairment, the ALJ must evaluate the child's functioning across six domains:

> (1) acquiring and using information,
> (2) attending and completing tasks,
> (3) interacting and relating with others,
> (4) moving about and manipulating objects,
> (5) caring for yourself, and
> (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i – vi). "[A] finding of 'extreme' limitation in one domain or of 'marked' limitation in two domains satisfies this criterion of functional equivalence." *Miller*, 409 Fed. Appx. at 386 (citing 20 C.F.R. § 416.926a(a)). There is an "extreme limitation" where a claimant's impairment "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. 416.92a(e)(3)(i). A "marked limitation" is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. 416a(e)(2)(i).

### III.    <u>THE ALJ'S DECISION</u>

To assess D.D.B.'s disability claim, the ALJ applied the three-step sequential analysis for individuals under the age of 18. (ECF No. 11 at 12). At step one, the ALJ concluded that D.D.B. had not engaged in substantial gainful activity since November 29, 2017, the date of filing for disability benefits. (*Id.*). At step two, the ALJ concluded that D.D.B. had the following severe impairments: major depressive disorder, social anxiety disorder, learning disorder, mixed language disorder, and scoliosis. (*Id.*). At step three, the ALJ first found that D.D.B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13). In reaching this conclusion, the ALJ reasoned that D.D.B.'s impairments did not meet or medically equal listings 101.15 (disorders of the skeletal spine resulting in compromise of nerve roots), 103.03 (asthma), 112.04 (bipolar and related disorders) or 112.06 (anxiety and obsessive-compulsive disorder) because the "record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal any listed impairment and no acceptable medical source designed to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment." *Id.*

The ALJ next concluded that D.D.B. does not have an impairment or combination of impairments that "functionally equals" the severity of the listings in 20 C.F.R. 416.924(d) and 416.926(a).  *Id.* at 13. In doing so, the ALJ concluded that

D.D.B. demonstrated "less than marked limitations" in the domains of acquiring and using information, attending and completing tasks, caring for yourself, health and physical well-being, and moving about and manipulating objects. But D.D.B. demonstrated "marked limitations" in the remaining domain of interacting and relating with others. *Id.* at 22-29. In so finding, the ALJ considered all relevant evidence, including objective medical evidence and other relevant evidence from medical sources; information from schoolteachers, family members, or friends; the claimant's statements; medical opinions; prior administrative medical findings; and educational assessments. *Id.* at 13-14. The ALJ then concluded that D.D.B. had not been disabled since the date of her application on November 29, 2017. (*Id.* at 29).

## IV.  DISCUSSION

Plaintiff challenges the ALJ's determination at step three of the sequential analysis, in which the ALJ found that D.D.B. did not have an impairment or combination of impairments that meet, equal, or functionally equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 12 at 15). As noted above, the ALJ found that D.D.B. had only one marked limitation in the domain of "interacting and relating with others" and "less than marked limitations" in all other domains, including "attending and completing tasks." (*Id.* at 16). Plaintiff argues that the ALJ's finding that D.D.B. had less than marked limitations "in attending and completing tasks" was both "unsupported and the product of legal error." (*Id.* at 15). For the reasons below, this Court disagrees.

A.    **Substantial Evidence in the Record Supports the ALJ's Finding that D.D.B. Demonstrated a Less than Marked Limitation in the Domain of Attending and Completing Tasks.**

As noted above, the ALJ determined that D.D.B. had "less than marked limitations" in the domain of attending and completing tasks, which looks at "how well [the claimant] is able to focus and maintain [their] attention, and how well [they] begin, carry through, and finish [their] activities, including the pace at which [they] perform activities and the ease with which [they] change them." 20 C.F.R. 416.926(h). Although D.D.B. argues otherwise, there is substantial evidence in the record to support the ALJ's finding.

First, the ALJ analyzed and summarized the history of D.D.B.'s medical and treatment records, educational records and assessments, consultative evaluations, treating therapist records, and hearing testimony from 2017 to 2022. *(See generally* ECF No. 11, at 14-21).  In doing so, the ALJ considered the opinions of various medical professionals who evaluated D.D.B. over the course of several years, along with various teachers who assessed D.D.B. to have mixed findings in this domain. *Id.* at 21. The ALJ acknowledged that an argument had been made that D.D.B. had marked limitations in attending and completing tasks (*id.*) and that the "claimant clearly has problems in completing homework/classwork assignments . . . [and] can be distracted and has trouble focusing." *Id.* at 24. But after weighing all the evidence, the ALJ ultimately determined that "the preponderance of evidence supports no more than moderate limitations in this domain." *Id.* at 21.

In support of this conclusion, the ALJ noted that "the claimant has never been diagnosed with attention deficit hyperactivity disorder (ADHD) nor taken any medication for such a condition." (*Id.* at 21). The ALJ also credited the evaluation of D.D.B.'s treating therapist, Stephanie Rojas, LMHC, whose assessment the ALJ found "highly persuasive" because she is "familiar with the claimant's symptoms and functioning" and her "findings and opinions are consistent with the overall evidence of record." (*Id.* at 21; ECF No. 11-2 at 142-146). According to the ALJ, this therapist had the best "longitudinal understanding of the claimant's functioning" (ECF No. 11 at 21) and found only a moderate limitation in the domain of attending and completing tasks. (ECF No. 11-2 at 143).

The ALJ also relied on a report dated March 20, 2018, from John Miller, Ph.D., who conducted a child consultative intelligence evaluation and psychiatric evaluation. (ECF No. 11-1 at 16-17). As the ALJ pointed out, Dr. Miller "gave the claimant the most thorough consultative evaluation based on both psychological and psychiatric examinations" (ECF No. 11 at 21) and found that D.D.B. had only "mild limitations" in her ability to "sustain concentration and complete age-appropriate tasks." (ECF No. 11-1 at 16-17; *see also* ECF No. 11 at 21).

Notably, the ALJ acknowledged that the State Agency consultants Drs. Harding and Abueg, "who never examined the claimant and did not have access to the entire file [do] indeed find marked limitations in this domain." (ECF No. 11 at 21). But the ALJ explained that these findings are "in direct contrast to the Agency consultants who actually did examine the claimant and find no more than mild

limitations in this area of functioning." (*Id.; see also* ECF Nos. 11-1 at 203, 241). Notably, Drs. Harding and Abueg rendered their opinion on D.D.B. in May 2018 and did not have the benefit of evidence submitted thereafter. (ECF No. 11 at 20). Thus, to the extent the ALJ credited some medical opinions over others, the ALJ explained his reasoning, including that the credited opinions came from professionals who had the opportunity to either personally evaluate D.D.B. or consider newly developed evidence. (*Id.* at 21)

The ALJ also evaluated educational records and assessments and noted that teacher opinions were mixed as to the domain of attending and completing tasks— with one finding "mostly zero or mild limitations" and another finding "a mix of zero, mild, obvious and serious problems in this area." (*Id.*). Also, D.D.B.'s updated IEP from October 2018 noted how the claimant has "excellent academic focus, [and] always begins tasks and works on them to completion." (ECF No. 11-2 at 81).

Thus, the Court finds substantial evidence in the record to support the ALJ's conclusion that D.D.B. had a less than marked limitation in this domain.

### B.    The ALJ's Statements about ADHD are Not Unsupported and, in any case, Do Not Constitute Legal Error.

Plaintiff makes several arguments about how the "ALJ's reasoning is flawed and refuted by the record." (ECF No. 12 at 16). Among them, Plaintiff points out that in rejecting arguments about D.D.B.'s marked limitations in attending and completing tasks, the ALJ noted that the claimant "has never been diagnosed" with ADHD "nor taken any medication for such a condition." (ECF No. 11 at 21). Yet

according to Plaintiff, the record does contain an ADHD diagnosis (ECF No. 12 at

16), and in any case, even without one, the record shows that D.D.B. has problems

with focusing and completing her work, as corroborated by her academic records

and IEP. (ECF No. 12 at 17). But the Court is not persuaded that the ALJ's

statements regarding ADHD are unsupported or constitute legal error.

First, although the ADHD diagnosis is listed in a pediatric note from January

6, 2017, the record is unclear about when and whether such a diagnosis was made.

Subsequent notes refer to a possible ADHD diagnosis from April 2016 (ECF Nos 11-

2 at 179, 308), while others do not list an ADHD diagnosis at all. (*Id.* at 331). No

academic records, including IEPs, appear to refer to such a diagnosis. And there is

no evidence of any medication being prescribed for it. Certainly, Plaintiff points to

no such evidence. Nor is it listed as an impairment, either severe or non-severe.

(ECF No. 11 at 13). Thus, it was reasonable for the ALJ to conclude that there was

no official ADHD diagnosis or medicine taken.

Second, even without an ADHD diagnosis, the ALJ considered the record as a

whole, including claimants' testimony, educational assessments, and IEP. (*Id.*)

Plaintiff seems to suggest that the ALJ placed too much weight on the lack of an

ADHD diagnosis and otherwise ignored record evidence that demonstrated D.D.B.'s

problems with focusing and completing her work. (ECF No. 12 at 16-17). But this

ignores the ALJ's detailed discussion of the record evidence about D.D.B.'s

difficulties in this area. For example, after evaluating the function report from

D.D.B.'s mother and the opinions from Drs. Harding and Abueg, the ALJ recognized

that D.D.B. "had problems in completing homework, classwork, and assignment accurately" and "can be distracted and has trouble focusing." (ECF No. 11 at 24). The ALJ also evaluated academic sources and identified evidence that D.D.B. had issues "working at a reasonable pace/finishing on time." (*Id*. at 18).

At most, Plaintiff appears to be arguing that the ALJ wrongly analyzed the record evidence, including medical opinions, by finding that D.D.B.'s struggles "are not at a marked level." (ECF No. 12 at 17). Plaintiff certainly highlights parts of the record supporting limitations, but conflicting evidence in the record exists, as the ALJ noted. For instance, the ALJ found that teacher opinions were mixed (ECF No. 11 at 21), and that the later IEP (October 2018) said D.D.B. had "excellent academic focus." (ECF No. 11-2 at 81). Indeed, in October 2022, during her annual physical, a physician's note indicates that D.D.B. was "doing well at school." (ECF No. 11-2 at 157).

As the Second Circuit has explained, this Court must "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *see also McGonagle v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022) (Summary Order). And where "evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Schillo*, 31 F.4th at 74. Because the Court finds that substantial evidence supports the ALJ's conclusion, this Court defers to the ALJ's determinations on this evidence.

### C.    The ALJ Did Not Err in Weighing the Various Medical Opinions and Academic Sources, or in Crediting Some Opinions But Not Others.

Plaintiff makes several arguments challenging the ALJ's reliance on some medical opinions and academic sources but not others. First, Plaintiff argues that the ALJ wrongly relied on D.D.B.'s treating therapist Ms. Rojas (as compared to other medical and academic sources) (ECF No. 12 at 17), and second, that the ALJ wrongly discounted D.D.B.'s school social worker, math teacher, and state agency psychiatric consultant, who supported marked or extreme limitations in the domain of attending and completing tasks. (*Id.* at 18). But Plaintiff's objections amount to issues with how the ALJ weighed evidence and resolved conflicts in the record. And as the Court explains below, this does not amount to legal error.

#### 1.    D.D.B.'s Treating therapist, Ms. Rojas

First, Plaintiff argues that the ALJ erred by relying on D.D.B.'s therapist— Ms. Rojas—who found only a moderate limitation in the domain of attending and completing tasks, because Ms. Rojas "only provided therapy for the purpose of building Claimant's social skills and social anxiety." (ECF No. 15 at 3). According to Plaintiff, under the relevant statutes, the "purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairments." (ECF No. 15 at 4) (citing 20 C.F.R. §416.920(c)(3)(iii). And here, Plaintiff argues that Ms. Rojas had "no firsthand knowledge of Claimant's ability to initiate and focus on tasks, her ability to manage her time, or her ability to complete work." (ECF No. 12 at 18).

But Plaintiff provides no evidence that Ms. Rojas lacked such knowledge or was otherwise unqualified to make the assessments she made. Instead, the record shows that Ms. Rojas served as D.D.B.'s primary therapist over the course of three and a half years. (ECF No. 11-2 at 142). Thus, the ALJ reasonably concluded that Ms. Rojas had "the best longitudinal understanding of the claimant's functioning." (ECF No. 11 at 21); *Cf. Ramirez v. Astrue*, No. 08 CIV. 7609 (SAS), 2009 WL 2356259, at *8 (S.D.N.Y. July 29, 2009) (finding that the ALJ did not "give proper weight to the reports of those who had a substantial longitudinal picture" of the claimant's functionality).

Also, in choosing to rely on Ms. Rojas' medical opinion, the ALJ properly considered the supportability and consistency of her opinions, and her familiarity with D.D.B. over the course of many years. (ECF No. 11 at 21). For applications filed on or after March 27, 2017, the "treating physician rule," which gave deference to the opinion of the treating physician, no longer applies. *Schillo*, 31 F.4th 64, 69 (2d Cir. 2022); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (summary order). The agency "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s)." *Id.;* 20 C.F.R. § 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions, under 20 C.F.R. § 404.1520c(c), the Commissioner will consider these five factors:

> (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including length of the treatment relationship, frequency of examination,

> purpose of the treatment relationship, extent of the
> treatment relationship, and whether the relationship
> is an examining relationship; (4) the medical source's
> specialization; and (5) other factors, including but not
> limited to evidence showing a medical source has
> familiarity with the other evidence in the claim or an
> understanding of [the SSA] disability program's
> policies and evidentiary requirements.

*Diaz v. Comm'r of Soc. Sec. Admin.,* No. 22CV2256KMKVR, 2023 WL 6390172, at

*3 (S.D.N.Y. Sept. 29, 2023); *Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d

261, 266 (E.D.N.Y. 2021).  The ALJ must address the first two factors,

supportability and consistency, but need not address the remaining ones. 20 C.F.R.

§ 404.1520c(b).[3]

Here, the ALJ found Ms. Rojas's opinion was "highly persuasive" for two key

reasons. First, as D.D.B.'s therapist, the ALJ recognized that Ms. Rojas is "familiar

with the claimant's symptoms and functioning." (ECF No. 11 at 21). Indeed, the

ALJ emphasized how Ms. Rojas has the "best longitudinal understanding of

claimant's functioning," given Ms. Rojas's lengthy relationship with D.D.B. (*Id*). A

review of Ms. Rojas' evaluation bears this out. Her evaluation, cited by the ALJ,

reveals that Ms. Rojas considered D.D.B.'s difficulty in tasks such as "beginning

and/or continuing a conversation" and affirming that D.D.B. had difficulty

independently initiating, sustaining or completing activities. (ECF No. 11-2 at 146).

---

[3] For *supportability*, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c). For *consistency*, "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.*

The ALJ notes that Ms. Rojas's opinion was consistent with "the overall evidence of record," too. (ECF No. 11 at 21). The ALJ noted that the "psychologist who gave the claimant the most thorough consultative evaluation" found only a "mild limitation," similar to Ms. Rojas's finding of only a "moderate limitation in this domain." (*Id.*). The ALJ also discussed how teacher opinions were mixed on this issue, with "one finding mostly zero or mild limitations in this domain" and another having mixed findings. (*Id.*). Thus, it was reasonable for the ALJ to conclude that Ms. Rojas's opinion was "highly persuasive." (*Id.*).

### 2.        Other medical opinions and academic sources

Plaintiff also argues that the ALJ erroneously rejected the opinions of other medical and academic sources familiar with D.D.B.'s functioning in the domain of attending and completing tasks. Plaintiff notes that "her school social worker, her math teacher, and the state agency psychiatric consultant [Dr. Harding] all concurred that Claimant has either marked or extreme limitations in this particular area of functioning." (ECF No. 12 at 18). But, according to Plaintiff, the ALJ rejected these opinions simply because they were "in direct contrast to the conclusions of two consultants[4] who were only hired to briefly assess Claimant's IQ and the presence of a speech disorder." (ECF No. 15 at 5) (internal quotations marks omitted). The Court disagrees.

---

[4] Plaintiff is likely referring to child psychologist, John Miller, Ph.D. and psychiatrist Neil Madero, Psy.D.

First, Plaintiff misstates the ALJ's opinion. He did not simply reject academic sources and the medical opinion of Dr. Harding because they conflicted with two consultative examiners. Instead, he considered all available academic and medical sources, weighed them against other conflicting evidence in the record (not just that of the consultative examiners), and provided reasons for why he credited some opinions and not others. (ECF No. 11 at 20-21). For example, when considering the medical opinions of Dr. Harding and Dr. Abeug, the ALJ explained that he found these opinions less persuasive because they did not "personally evaluate D.D.B." and "did not have the opportunity to review evidence submitted after" May 2018 when reaching their conclusions. (ECF No. 14 at 22-23). By contrast, the sources the ALJ did credit (like, Dr. Miller, Dr. Madera,[5] and LMHC Rojas) either personally evaluated D.D.B., and/or had the opportunity to consider newly submitted evidence, such as an updated IEP that stated D.D.B. was "able to maintain her focus and was consistently staying focused." (ECF No. 11-2 at 81).

Similarly, the ALJ did not simply reject evidence from D.D.B.'s school social worker and math teacher. He reviewed this evidence and weighed it against other conflicting evidence in the record. For example, the ALJ discusses how D.D.B.'s 7th grade math teacher noted a "very serious problem . . . in working at a reasonable pace/finishing on time," among other issues. (ECF No. 11 at 18). But the ALJ also noted that both Mr. Thai (a 6th grade teacher) and another seventh-grade teacher

---

[5] Although the ALJ credited Dr. Madero's opinion to the extent it was consistent with Dr. Miller's, the ALJ otherwise found Dr. Madero's opinion unpersuasive because he found only moderate limitations in interacting adequately with adults, which the ALJ found inconsistent with the record. (ECF No. 11 at 21). Specifically, the ALJ found a marked limitation in "interacting with others."

assessed mixed opinions in this area, with "one finding mostly zero or mild limitations" in most sub-areas and "another find[ing] a mix of zero, mild, obvious, and serious problems in this domain." (ECF No. 11 at 21). Additionally, while D.D.B.'s October 2017 IEP indicated she was sometimes distracted in class, the IEP for the year after showed that D.D.B. had "excellent academic focus" and "begins tasks and works on them to completion." (ECF No. 11-2 at 81.). And according to an annual physical note from October 31, 2022, D.D.B. was reportedly "doing well at school," too. (*Id.* at 157).

Second, to the extent Plaintiff argues that consultative examiners are a "less-reliable" form of evidence (ECF No. 15 at 5), this argument lacks merit. Plaintiff emphasizes that consultative examiners are "less-reliable" (ECF No. 15 at 5), because "the regulations provide that the ALJ will not draw inferences about a child's functioning in other situations based only on how they function in a one-to-one, new, or unusual situation." (ECF No. 12 at 18) (quoting 20 C.F.R. §416.924a(b)(6)) (internal quotations omitted). Plaintiff appears to argue that Dr. Harding's opinion was more reliable, because it was based on D.D.B.'s academic records, rather than on a one-time in-person evaluation like Dr. Miller's. (ECF No. 12 at 18). But this ignores that Dr. Harding did not review any academic records after May 2018, including those that provided more positive statements about D.D.B.'s functioning. This also ignores the ALJ's assessment that Dr. Miller "gave the claimant the most thorough consultative evaluation based on both psychological and psychiatric examinations." (ECF 11 at 21). And more importantly, this ignores

that the ALJ found that Ms. Rojas, D.D.B.'s treating therapist, was "familiar with the claimant's symptoms and functioning" (ECF No. 11 at 21), and had the "best longitudinal understanding of claimant's functioning," given her lengthy relationship with D.D.B. (*Id*).

Plaintiff may disagree with how the ALJ weighed the conflicting academic sources and medical opinions, but this disagreement does not amount to legal error. As noted earlier, "it is the role of the ALJ to resolve conflict[s] in the evidence, and the ALJ is permitted to choose between contradictory medical opinion." (*Id.*) (citing *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023)). Thus, the Court finds that the ALJ did not err in crediting some opinions over others in concluding that D.D.B. had a less than marked limitation in this domain.

### D.    The ALJ Did Not Mischaracterize the Record of D.D.B.'s Absences, But Even if He Had, Any Error Would be Harmless.

Lastly, Plaintiff argues that the ALJ committed legal error when he "mischaracterize[d] the record by describing Claimant's absences as unexplained, where the school plainly documents the absences as due to anxiety." (ECF No. 12 at 19) (internal quotations omitted). According to Plaintiff, the ALJ erred in two ways: 1) the ALJ "speculated" that the counselor and teacher linked D.D.B.'s marked limitations to school absences, even though the report never directly linked the two; and 2) the ALJ should have considered "how those absences, resulting from impairments, further impacts her ability to function" rather than dismissing them as "unexplained." (ECF No. 12 at 19).

Plaintiff's argument relies on the premise that D.D.B.'s excessive absences resulted from her anxiety and that the school records plainly documented this. But there is a notable lack of evidence in the record to link the two. For instance, D.D.B.'s excessive absences from school were primarily not attributed to medical impairments in the school record. (ECF No. 11-2 at 124) (noting several instances of D.D.B. being absent without a medical excuse). A pediatric note recognized that D.D.B. "missed a lot of school days . . . mom kept them out of school for various reasons, get hair done, shop." (ECF No. 11-2 at 173). And school records indicate that Plaintiff failed to provide documentation to explain these absences when requested to do so. (ECF No. 11-2 at 124).

Plaintiff does point to one reference to anxiety in D.D.B.'s school records: a New York City Public School Student Intervention Log, which once refers to D.D.B. being absent "due to anxiety." (ECF No. 11-2 at 124). But this one mention is a far cry from Plaintiff's assertion that the "school plainly documents the absences as due to anxiety." (ECF No. 12 at 19) In any case, that same exhibit memorializes many times where D.D.B. was absent without excuse: "Parent says daughter is sick but doesn't provide notes for her absentes [*sic*]"; "a letter will be sent home due to absences"; "Student came in today . . . no doctor/parent note." (*Id.*). And as noted above, medical chart notes from FNP Polen indicate that D.D.B.'s mother identified various reasons for why D.D.B. missed a lot of school days, none of which included anxiety. (ECF No. 11-1 at 217) (noting that D.D.B. "missed a lot of school days . . . mom kept them out of school for various reasons, get hair done, shop."). Thus, there

is substantial evidence in the record from which the ALJ could conclude that

D.D.B.'s absences were largely unexplained.[6]

In any case, any error in the ALJ's assessment of D.D.B.'s absences is

harmless. It is true that the ALJ refers to the teacher's findings about limitations

and notes that D.D.B. "had a significant number of unexplained absences from

school, implying a link between the two." (ECF No. 11 at 21). So perhaps the ALJ

did engage in some speculation about whether a link was "implied" by the teacher.

But even assuming D.D.B.'s absences were due to anxiety, this would not

undermine the ALJ's findings. The ALJ still took into account the teacher's findings

about D.D.B.'s limitations (whether due to anxiety or not) and observed that

"[t]eacher opinions have been mixed in this area with one finding mostly zero or

mild limitations in this domain, while another finds a mix of zero, mild, obvious and

serious problems in this area of functioning." (*Id.*) (internal citations omitted).

In addition, the ALJ relied on other substantial evidence in the record to

support his findings, including other academic sources.[7] Generally, an error is

harmless, and remand is not necessary, when applying the correct standards could

---

[6] Plaintiff's citations on this point are inapposite. In *Rylee J.C. v. Comm. of Soc. Sec.,* the court found that the ALJ "mischaracterized the record" by finding "no evidence that Plaintiff's hip condition affected her functional abilities," but failed to consider treatment notes that said as much. *Rylee J. C. v. Comm'r of Soc. Sec.*, No. 5:22-CV-0331, 2023 WL 3182637, at *9 (N.D.N.Y. May 1, 2023). Similarly, in *Acosta v. Colvin*, the court found that the ALJ "mischaracterized the medical evidence" by rejecting the claim that Acosta was still experiencing pain in the months following her surgery, when the medical records the ALJ relied upon contained such evidence. *Acosta v. Colvin*, No. 15-CV-4051 (RLE), 2016 WL 6952338, at *19 (S.D.N.Y. Nov. 28, 2016). Unlike in *Rylee J.C.* and *Acosta*, the ALJ in this case did not mischaracterize the absences as unexplained, as the record showed that D.D.B.'s absences were largely either without medical note or attributed to reasons other than the alleged limitation at issue here.
[7] *See supra* Parts A, B, and C.

only lead to one conclusion. *See generally Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Here, as discussed earlier, the ALJ had considerable evidence on which to rely other than D.D.B.'s absences and one teacher's assessment, including other academic records and opinions from medical professionals that evaluated D.D.B. in this specific domain. Thus, even if the ALJ did speculate improperly about D.D.B.'s absences, the Court would have reached the same conclusion that substantial evidence in the record supports the ALJ's findings.

## **CONCLUSION**

Because the ALJ's findings were both free from legal error and supported by substantial evidence, I find that Plaintiff's motion for judgment on the pleadings is **DENIED** and the Commissioner's cross-motion for judgment on the pleadings is **GRANTED.**

        **SO ORDERED.**

DATED:        White Plains, New York
              March 27, 2025


                                    _____
                                    VICTORIA REZNIK
                                    United States Magistrate Judge